Judge Owsley
delivered tbo opinion of the Court.
Lee exhibited his hill in equity against James M. Marshall, the heirs of William Marshall, deceased, and the surviving executors named in the will of Col. Thomas Marshall,- deceased, praying that the executors be decreed to convey to him a tract of four hundred and eighty acres of land, lying in the county of Mason, which- he had purchased of the said James M. Marshall, and the deceased, William Marshall, sons of the deceased Col. Thomas Marshall, and which, by the will of the latter, was devised to his executors See.
The facts alleged by the complainant, and admit-ed by the defendants, and upon which the prayer for a'decree is made to depend, are substantially the following:
Many years ago, in 1788, whilst the land in con-1 test belonged to Col. Thomas Marshall, two of his sons, William and James M. Marshall, without his knowledge, contracted to sell, and, in fact, did sell the same, received the sale money, and executed their obligation to Lee for a title. ’ When informed by Lee of his purchase, Col. Marshall expressed his dissatisfaction at the conduct of his sons in selling the land, but finally concluded that as he had not advanced to his son William as much as he intended giving him, that he would convey the title to Lee, and reserve that much out of the ad" vancements which he had intended in future to make William, and accordingly Col. Marshall gave to his son Thomas, who was then his agent and attorney in fact, verbal directions to make a conveyance of the title to Lee. Having received these assurances that the title would be made, Lee some *239 time in 1794, settled a tenant Apon the land, and has held the possession thereof ever since.
Both Marshall the elder and the son appointed to convey die without making the deed.
Last will and testament of Thos. Marshall the elder.
Thomas Marshall, however, neglected to make the conveyance, until his father, after making and publishing his last will and testament, departed this life, some time in the year one thousand eight hundred and two. The will was afterwards admitted to record, and the executors therein named, took upon themselves its execution; but owing to the death of Thomas Marshall, Jr. one of the executors named, the burthen of executing the will devolved upon the surviving executors, Humphrey Marshall and Alexander K. Marshall.
The will, among various other provisions contains a reservation of five hundred acres of land, out of the part of the testator’s estate, which had been designed by him for his son William Marshall; but the reason that influenced the testator in making the reservation, is no where expressed in the will; though it is said by the executor, Alexander K. Marshall, in his answer, that it was done in consequence of the sale of the land to Lee.
After numerous devises and bequests to the. children of the testator, the will contains the following provisions, viz:
“I give and bequeath tinto my executors hereinafter named, all the rest and residue of my landed estate, for the following purposes, to-wit: In the first place, as my landed estate, now given to my .executors, is much disputed by other claims, I do hereby vest the whole of them in my executors, ■with full power to investigate, divide and assign the locators parts, to compound with other claims, or sell the chances of titles, or sue, or stand suits, as they may conceive most advantageous, without being accountable to any person or persons whatever; and to sell and convey in what manner they please, .all or any part thereof, without being accountable any farther than the sums actually received by them; and appropriate the moneys arising from such sale, first, towards paying my debts and legacies, mentioned in this will, and all expenses attending in *240 vestigating and litigating my land claims, and the annual taxes arising on said claims &c.”
Executors made the fill aljudgos between the devisees; an appeal from their decision to operate as a forfeiture.
And after providing a compensation to the executors, for the trouble and loss of time, which they might be at in performing the trust reposed in them, the will goes on to provide:
“I direct my executors to sell the balance of my land, and divide the money, or else, as they may think best, to divide the lands in the following manner, to-wit:
First, they are to equalize all my sons and daughr tors as near as they can judge — my daughters with the standard of daughters; and,my sons with each other, without taking into consideration any improvements or waste done by them; and if any ovcrplus remain, then, it is to be sold, and the money arising from such sale, my executors are to divide equally amongst all my children or their representatives &c.”
And after giving the rule by which the interest of the children was to be equalized by the executors, the will proceeds: “and whereas disputes may arise between some of my children and my executors about the division of my residuary estate, it is my will, and I do hereby appoint my executors, where they-mutually agree, to he the sole judges of the equality &c. &c. and if any of my children shall sue, or implead any of my executors, respecting the construction of my will, or dividing any part of the residuary estate, such child or children, shall immediately forfeit all right or title to the residue, or dividend, they might otherwise he entitled to, and the same shall be sold and divided between the remainder of my children; and as it is necessary to vest my executors with full power and authority, without control, further than has been already mentioned, to do whatever they shall mutually agree upon, in as full and ample manner as if the lands were bona fide their own property, I do hereby declare, that it is my will, and i do hereby direct that' my executors, shall completely convey any title, or release any equity 5 may possess in any lands hereby-vested in them, without being subject to any dam- *241 Sage or future revision of their conduct, in settling disputes in any claim under their direction; and if either of my executors shall happen to die &c. the survivor or one acting, shall he completely authorized t'o act, subject to the directions &c.”
Decree of tho circuit court, directing the executors of Marshall to convey the land to Lee.
Bill of the Colstons &c. representing testator’s deceased children, to enjoin the conveyance;
Allegations of the Coleston’s bill.
The court below were of opinion, upon the preceding facts, (the statute of frauds not being pleaded, or in any manner relied upon by the defendants,) that Lee was equitably entitled to a conveyance of the land, purchased of James M. and William Marshall, and decreed, that the surviving executors of Col. Thomas Marshall, in whom the legal title resides, should convey the same to Lee.
In this state of things, and before the executors conveyed the title to Lee, the children of Charlotte Duke, deceased, who was one of the daughters of Col. Thomas Marshall, Eliza Colston and Jane Taylor, two other of his children, together with their husbands, claiming the land under the residuary provision of the will of their father, exhibited their bill in equity, against both complainant and defendants, in the suit of Leo against Marshall &c.
After setting out the proceedings and decree in-the suit brought by Lee, they charge, that the interest which they have received under the will of Col. Marshall, falls far short of being equal to that received for the other daughters of the testator, or equal to what the testator designed they should have; that the land claimed by Lee, and which, by the decree made in the suit brought by him, the executors are directed to convey to him, is part of the lands which belonged to Col. Thomas Marshall, deceased, and which by his will, was devised to his executors in trust, for the purposes mentioned in the residuary clause of Ins will.- That with the land claimed by Lee,' there is not a sufficiency of the residuary lands devised, to make their portions of the estate equal to what the testator intended they should be; and that the executors of Col. Marshall, deceased, with full knowledge thereof, .and with a knowledge that he had never by any written memorandum or agreement bound himself to convey to-Lee, refused to make the proper defence to the suit *242 brought against them by Lee, and plead and rely upon the statute against frauds and perjuries; but on the contrary, have admitted the justice of Lee’s demand, and thereby enabled him to succeed in obtaining a decree for the title.
Injunction.
Answer of the executors and Leo to the bill of the Colstons.
Lee’s case continued by-orders of the court.
Decree of the circuit court enjoining the execution of Lee’s decree against Marshall’s executors.
Appeals.
If a final decree has been pronounced, keeping the cause on the docket, and entering continuances, give the court no power over it.
*242 They prayed for, and obtained an injunction restraining the executors from conveying, and Lee from receiving the title, until their case could he heard in equity, and asked for such a decree to be finally made, as might he consistent with the equity of their case.
This bill was answered by the executors and Lee; the former, in substance, repeating and admitting the same facts that had been previously stated in their answer to Lee’s bill; and the latter again asserting what he had charged in his bill against the executors, and insisting upon his equitable right to a conveyance of the land.
After the decree which was pronounced in the suit of Lee, and the order of continuance which was made at the same time, there appears to have been nothing farther done in that case, except at the successive terms of the court, orders were made continuing the cause, until, as appears from the record, both causes came on to be finally heard upon the bills and answers of each party.
Upon that hearing, the court were of opinion, that Lee was not entitled to a conveyance, and decreed, that the executors should be perpetually enjoined from conveying the laud to Lee; and as to the other matters and tilings charged by the respective parties in their bills, ordered that each party should he left to pursue other suits &c.
From that decree each party has appealed.
From the preceding statement it will he perceived, that the decree now presented for our consideration and revision, appears to have been pronounced by the court below, on hearing of the suit first brought by Lee against the executors of Marshall, as well as that which was afterwards brought by Duke &c. against Lee and the executors. But *243 notwithstanding such appears from the record to be the fact, it is quite evident from other parts of the record, that in making the decree, the court derived from the suit first brought by Lee, no control over the matter then in contest. That suit had long before been regularly heard, and a final decree therein pronounced in favor of Lee for a conveyance; and although after the decree was made, the suit appears to have been kept upon the docket and continued from time to time, until the case of Duke &c. against Lee &c. was heard, the court cannot have thereby, derived any power over the final decree previously made, as has been repeatedly decided by this court. Watson vs. Thomas, Select cas. 248, Larue vs. Larue, 2 Litt. R. 258.
Decree in Lee’s case against the executors, held to be not before this court, to be examined whether erroneous or not.
Case of Lee vs. the executors examined, to determine on the merits of the bill to enjoin the execution of the decree for Leo.
In the consideration that we have given to the decree appealed from, we have not, therefore, felt ourselves at liberty to travel back and examine the merits of the decree pronounced in favor of Lee, in the suit brought by him, as we should have done, if the appeal had been taken from it; but passing by that decree as one acquiesced in by the parties to the suit in which it was pronounced, we have limited our inquiries to an examination into the propriety of decreeing a perpetual injunction against the execution of it upon the hearing of the suit, which was brought by Duke &c.
The object of the suit which was brought by Duke &c. being to stay the execution of the final decree previously made in favor of Lee, we have, in the course of examination, had occasion to look into the nature of the claim set up by Lee in the suit brought by him against the executors of Col. Marshall, as well as into the character of the defence which was made by the executors, to that suit; not, however, for the purpose of correcting errors, if there be any, committed by the court in deciding that case, but for the purpose of forming a satisfactory opinion with respect to the right of Duke &c. upon the facts contained in, the record of the suit brought by them, to demand a perpetual injunction against the decree that was pronounced in favor of Lee, in the suit brought by him.
■Decree for Lee against the executors of Marshall, ¡held to be 3u'st.
Grounds on which the circuit court decreed an injunction against the execution of the convey.ance ordered by Lee’s decree against the executors.
Whatever objections might, in point of strict law, have been urged against Lee’s claim, by the executors of Colonel Marshall, in their defence to the suit brought by him, it is believed no candid and unbh assed mind, after examining the facts contained in the record, can hesitate to admit the justice of that claim. It is alleged by Lee in his bill, admitted by the executors in their answer, and not even controverted by any suggestion in the bill brought by Duke, &c. that the land was not only purchased by Lee from the sons of Col. Marshall, and the price paid by him, but that the Colonel afterwards promised Lee that he would convey the title, and relying upon that promise, Lee actually enterecj upon the land, improved the same, and has continued in possession thereof ever since. The right of Lee to have a conveyance of the land, must, therefore, under these circumstances, be admitted in morality and good conscience, to be not only undisputed but im disputable. It was to stay the execution of a decree sanctioning this right of Lee, and directing the executors of Col. Marshall to convey the land, that the bill of Duke &c. was exhibited, and upon the general hearing of which, the decree, (the correctness of which is now the subject of consideration,) was made, perpetually enjoining the executors from con - veying, and Lee from receiving a conveyance of thp land.
The grounds upon which Puke &c. asked relief, and upop which a perpetual injunction against Lee’s decree was finally made by the court below, may be discovered by adverting to the statement which we have already given, of the facts charged in their bill. From that statement it will be seen, that whilst the moral justice of Lee’s right to a conveyance is not denied by Duke &c. it is insisted by them that the promise of their testator, upon which the decree in favor of Lee was based, was not m writing, and being by parol only, it is urged, that to a faithful discharge of the trust reposed in them, by the will of the testator, the executors should'have pleaded or relied upon the statute against frauds and per-» juries, .in defence to the suit brought against them, try Lee; but as they failed to dp so, anda decree has, *245 in consequence of their failure, been pronounced in favor of Lee, it is contended, that as residuary devisees under the will of the testator, Duke &c. had the light, and it was proper for them to' do so, to apply to a court of equity for tlip purpose of enjoining the executors from conveying the land according to the directions of the decree.
No person ^art6 bin who would not bp contest tbe right to the ™lief Pray" e
Devisees of ne_ cessary partiesto Lee’s K1 again(st 1 cxecu 01 ‘ Prohibitions in the testament against the devisees questioning the acts and decisions of the executors, and forfeiture of their interests, affixed as the penalty for such a controversy, did not divest the devisees of the power to convene the executors for fraudulent and collusive conduct.
*245 We should.not doubt the propriety of the applipation of Duke &c. were it conceded that the resi¿luary devisees under the will of the testator, were necessary parties to the suit of Lee, and ought to have been before the court, before the decree.in that case was pronounced. There can be no necessity for makjng any person a party to a suit, who would not, if a party, be at liberty to answer and contest the right of the complainant to recover, and if not made a party, he ought not, and cannot he prevented by any decree that may be made, from again bringing the subject of tbe decree before the court, and controverting the right thereby adjudged for the complainant.
But we are not prepared to admit that there was any necessity to make the residuary devisees parties to the suit which was brought by Lee against tbe executors. The land which was the subject of contest is expressly devised to the executors, and although they may be said to hold it in trust for the purposes of the will, it is impossible; from the various provisions of the will, to dpubt but. what the testator intended, not only to vest the legal title of the land in contest, as well as other lands, in his executors, but that he has, as fully and completely, as it was possible for him to do, given to the executors the sole and exclusive right to prosecute any suit, or defend such suits as might be brought for the land. To recover lands, the legal title whereof is held by executors, though in trust, under a will so comprehensive as that of the testator, it cannot be necessary, we apprehend, to make any one a party except the executors, and of course, it was not necessary in the suit brought by Lee, to make any of the resi•¡duary devisees parties.
Kxe'culovs of Marshall knowing Lee*s right to a conveyance of the hind, on the parol obligation of their testator, were not bound to ^auds^nd perjuries.
*246 But whilst wc conceive that there was no necessity to make Duke &c. parties to the suit which was brought by Lee, we would not be understood to say, that as residuary legatees, they might not, through, the aid of a court of equity, draw in question and investigate any collusive and fraudulent recovery, which might be suffered or procured by the executors, to the prejudice of their rights under the will. From some of the provisions contained in the will, it would seem not to have been intended by the testator, that any act which might be done by the executors, should be questioned by any of the residuary devisees. So pointed and emphatic is the will upon this subject, that, in one of its clauses, it is provided, that “if any of my children shall sue, or implead any of my executors, respecting the construction of my will, or dividing any part of the residuary estate, such child or children, shall immediately forfeit all.right or title to the residue,” &c. Other provisions of like import might be adverted to, hut we conceive it unnecessary. The whole will tallen together, displays a studied caution in the testator so to word it, as not only to vest the legal title of his residuary lands in his executors, hut also to restrain such of his children as were made interested in those lands, from doing any act, either by suit or otherwise, that might tend to embarrass the executors in the exercise of that discretionary power, which was designed by the testator to be conferred upon them in relation to that part of his estate. We should not, however, be inclined to give a construction to the will, which would prevent any of the residuary devisees, from drawing into judicial investigation, any collusive or fraudulent conduct of the executors, which may be prejudicial to their interest under the will.
But as respects the matter now in contest, whether we advert to the allegations contained in the pleadings of the parties, or to the proof in the cause, there is no pretext for imputing fraud to the executors. They have, it is true, failed to insist upon the statute against frauds and perjuries, in the defence which they made to the suit which was brought against them by Lee, for the land, and it may also *247 be true, tbatowing to their failure to plead that slatute, Lee may have succeeded in obtaining a decree, which might, if the statute had been pleaded or relied upon by them in their answer, have been against him. But the executors appear to have known that in moral justice, Lee was entitled to a conveyance of the land, under an agreement with their testator, and possessing a knowledge of the transaction between their testator and Lee, it was incumbent upon them as honest men, when called on by Lee in his bill, to acknowledge it, and having disclosed the facts within their knowledge it; most undisputably cannot have been either fraudulent or immoral in them, not to rely or insist upon the statute against frauds and perjuries, for the purpose of defeating Lee in the recovery of that to which, in conscience, they knew he was entitled.
P?°.reo en* in faVOr .,f Loe, for tho con-re}'ancc>hoM
Equity will, Wateo'"^ prayeiq compel executor limitation.
If the bill tbecomplainant may not iiave leave to make new parties, on reoree render" ¿I for him."
*247 Hence we infer that in the suit brought by Lee, tbe executors were under no legal or moral duty to rely upon -the statute in bar of his recovery, and that their failure to do so furnishes no cause for the residuary devisees to apply to a court of equity to enjoin the execution oí the decree pronounced m favour of Lee. In our researches upon the subject, we have met with no adjudged case which goes directly to support the opinion that we have expressed; but there are analogous .cases which strongly fortify the conclusion to which wc have come.
The cases to which we allude, are those wherein it has been held, that equity will not, in favor of a residuary legatee, compel an executor, on his refusal to do so, to plead the statute of limitations, to an action brought against him by a creditor, though the creditors demand be barred by the statute, 4 Bac. Abr. 429; 1 Eq. cas. abr. 305; Pr. ch. 100; Tol. law ex’ors. 343.
The decree must therefore he reversed.
Were it even conceded that the residuary devisees might be entitled to sustain such a bill as that brought by Duke &c. the decree would have to be reversed, because all of the children of the testator who have an interest in the residuary lands are not, as they *248 ought to be, parties to the suit; but in that case the complaiiiants would be entitled to amen'd their bill, and the cause would have to be remanded for the proper parties to be made. Entertaining, however, as we do, the opinion that no sufficient case is allege<^ *n ^ie kill of Duke &c. for questioning the decree which was pronounced in favor of Lee, it cannot be necessary to cause any other parties to be brought before the court; and of course when the case is remanded, as it must be, to the court below, a decree must be there entered dismissing the bill of Duke &c. with cost.
Crittenden, for Lee; Hoggin and Loughborough, fur Marshall’s executors, &c<
Duke &c. must pay the cost of both appéals in-this court.

Chief Justice Bibb did not sit in this cause.